I want to talk about a couple of key facts in this case that will help the court answer the question of whether the Appellees here, Alan Ritchey and Alan Ritchey Bnft Plan, can enforce the terms of the summary plan description that they drafted as if those terms were contained in the Section 402 ERISA Plan document that's required by the statute. Specifically, this case is about whether they can enforce the reimbursement and subrogation provisions as well as the attorney's fees provisions that are contained in that document. Sotomayor, as I understand it, several circuits have said that it's okay just to have the one written document? That's correct. The Sixth Circuit in the Moore case, the Eleventh Circuit in the Montanil case, which was reversed by the Supreme Court, but on a different issue. The key fact in this case is what distinguishes it from both Moore and Montanil. The key fact is that in the summary plan description that we have here, it tells the beneficiaries that it's not the plan document. Page 749 of the record, it's reproduced in our brief. There's a section that's called Plan Document, big, bold letters. And it states, This summary plan description presents an overview of your benefits. In the event of any discrepancy between this summary plan description and the official plan document, the plan document shall govern. Isn't — didn't the same thing happen in some of the other circuit cases, that there was reference to an additional plan document that, in fact, never existed? In the Moore case, they didn't have that language in the plan. In the Montanil case, I don't believe they had that language as well. There are some district court decisions where you had similar language. We cited them in our reply brief, like the Maher case, where there were specific references to a separate document being in existence. And they said when that happens, you can't enforce the summary plan description as if it were the plan. Judge Prado, last year in the Burrell case, you wrote, typically the terms of an SPD you're not controlling unless the SPD is incorporated into the plan. That was in the Burrell case. And in Burrell, there was a separate plan document. And you refused to add the SPD provisions unless they're incorporated. The exact opposite happened here. And we also have an admission by the apologies, in response to requests for admissions, that there was no way for Donna Ray or any other beneficiary to know that Alan Ritchie treated the summary plan description as the official plan document. If there were — if you don't want to create a circuit split, those facts distinguish this case from the courts that have held you can have a summary plan description also function as a plan document. And not only is there that language, which doesn't include anything that would tell a reader that this is actually the plan document. Alan Ritchie is an ERISA fiduciary. They're not supposed to make misrepresentations to their beneficiaries. This Court has been clear about that over and over. And to say there is an official plan document out there is a misrepresentation. So that's what distinguishes this case from the other circuit cases, that in this case, the summary plan makes reference to something else? Yes. Yes. And in the other cases, there was no reference to another document? In Moore and Montanillo, which are the two main cases, I — there are no references to another document. There are some in district court cases. And the Pritchard case from the Ninth Circuit, which we've also cited in our brief, talks about where the summary plan description doesn't have anything that would let you know that it was a plan document that includes language that says there's another document that's controlling. Under those circumstances, we're not going to treat the summary plan as if it were the plan. And it's critical, because under Amara from the Supreme Court and under McCutcheon, since the Amara case in particular, what matters is the language in the plan. Now, in McCutcheon, there was a — that was a summary plan — a summary plan description case. In that situation, all the parties agreed that the summary plan description was the plan document. So the McCutcheon court didn't face this issue, but they said the terms of the plan are enforceable, and they're enforceable as if they were a contract. It seems to me that under your reasoning, in this particular case, there was no plan. There was no official ERISA plan document. That's correct. Was there a welfare benefits plan? Yes. There obviously was. There was a welfare benefits plan that paid benefits to Donna Rae. It provided her the equivalent of health insurance under ERISA. Pursuant to what document? Well, this is one of the things that the district court talked about. And they said that, well, if you were making a benefits request, you would be looking at the summary plan description, since that's the only document. And it was kind of a, what's good for the goose is good for the gander, reasoning that the court — that the court engaged in. But that's a false equivalency, because Donna Rae is not an ERISA fiduciary. Donna Rae is not required to follow Federal law. Donna Rae isn't tasked by Congress with drafting the documents that the law says you're supposed to have. Well, so under your theory, then, she gets to have it both ways. That is, that she can depend on the summary plan description if it helps her, and if it hurts her, she can say, well, there's not really any plan here. Yeah. Again, I think that's a false equivalency. If we had that suit, if Donna Rae were filing a claim for benefits, which is not what we have here, Alan Ritchie would be in the awkward position of saying, we don't have an ERISA plan document, we're not in compliance with ERISA, which would create all sorts of trouble for them. And in that situation, you would probably end up like in McCutcheon or in this Court's Dudley case, where the parties all agreed that the summary plan description was the only document, so we're going to follow it here. So is summary plan just the name? No. I mean, it can't be a summary of something that does not exist. The — I know it's going to sound weird coming from an attorney representing a personal injury plaintiff, but Justice Scalia got this right. In his concurrence in Amara, he said exactly that. You know, how can you have a summary of something that is itself? How can you summarize yourself? A summary plan description that also functions as a plan document is summarizing itself, if Applees are right. And as I've said, you don't have to create a circuit split to reverse here. The facts of this case are unique. The fiduciary issues are unique because of the representations that they make. If you want to create a circuit split, I think you should, because I think that the Moore court and the Montanil court are wrong. The statute says you need to have a plan document. It's supposed to have all of the legalisms in it. The statute says you're supposed to have a summary plan description that's supposed to be in plain English and inform your beneficiaries about their rights and responsibilities. You're supposed to have both. Well, there was enough legalism in the plan document for your client to get her medical expenses paid under that document. Isn't that right? She did get her medical expenses paid. That's not an issue. So whatever legalism was required, it was sufficient that those expenses got paid. It was sufficient for that, yes. And it's the same document that you now argue she shouldn't be required to reimburse when she recovers from a third party. That's right, because it's a different situation. They are trying to enforce a document that they never drafted, which was a Section 402a plan document. They decided after the fact, based on an affidavit from their benefits administrator, that this is our plan document now. They're the ones who made that choice. Alan Ritchie did. But by default, if there is no plan, does the summary plan become the plan? Not by default, no. If there's no plan, there's got to be something written somewhere that tells you what the benefits are and how it functions. And if all you have is the document titled summary plan, wouldn't that, in essence, become the plan? Let's understand that there's two separate issues here. The issue here is whether, under McCutcheon, the Supreme Court case in McCutcheon, they said that if the plan document has reimbursement and subrogation provision, those trump any equitable considerations. There's no made-whole doctrine, there's no common benefit doctrine, none of those things. So ERISA plans get that right. My contention is, with rights come responsibilities, and if they want to enforce that document and get those rights, to take Donna Rae's property, the court — district courts seem to think it was a windfall. It's not a windfall. It's her property. If there was no subrogation language, they might have an equitable subrogation right to which she could interpose the made-whole doctrine — she definitely wasn't made-whole — and the common fund doctrine, where they'd have to pay their share of attorney's fees. But if you put that language in your ERISA plan, the Supreme Court said you can enforce it without regard to those. So their responsibility under the law is to put that in their ERISA plan, and they didn't draft one. Their responsibility under the law is to draft two documents, and they didn't do it. If they're going to — part of our contention is, if they're going to exercise their rights, they have to follow their responsibilities under the law first. And Donna Rae is not an ERISA fiduciary. She didn't have those responsibilities. She did what she was supposed to do here, by the way, which was she told her plan about it. In the Montanil case, the Supreme Court basically said if you take the money and spend it, nobody has a claim. It's a very strange decision, but they said that. Donna didn't do that. Donna put the money in a trust account. Donna told them about it, and then she asked them for the plan document, because the summary plan description says there is one. And when she did that, they sent her an affidavit from their benefits administrator that said, this is our plan. It has all of the things that ERISA requires. That was another misrepresentation. So you said, Amendigo, that if the — if the plan wants to enforce its rights, it's got to have — it's got to have the full plan referred to in the document. So it follows from that, it seems to me, that under the situation here, the plan has no rights. Yes. That is correct with respect to subrogation rights. Or any rights. It has no rights, because it's referred to a document that doesn't exist. It may have liabilities or duties, but it has no rights. No. They still have an equitable subrogation right under Texas law that they would be able to exercise based upon the benefits that they paid to Donna Ray. They could make that claim. But no rights under the — under the summary. But they don't get, because they didn't fulfill their responsibilities under the statute, is the right to, by contract, say, we get every single dollar that we paid, we don't have to pay attorney's fees, we don't have to pay court costs, we don't have to do anything other than take your money. Now, the Supreme Court in McCutcheon said they can do that. But the very least that they should do if they're going to exercise that kind of right to take someone's property is to comply with the law. That's really what we're asking this Court to look at. That's what makes this case different here, because not only didn't they comply with the law, they told Donna Ray that they had. They told her over and over again, not just in the plan, but in this affidavit, which, as the testimony from that person says, is not true. But the plan did talk about a right of subrogation and a right to reimbursement, didn't it? The summary plan description does. It's a very nice, very detailed. If it were in a plan document, we wouldn't be here. If it were in the document that Alan Ritchie finally drafted after we filed this lawsuit, which is also part of the record, we wouldn't be here. We would have to pay them the money. But if she were relying on the summary plan description, she would have had reason to believe that she was going to have to reimburse when she recovered from a third party, if she were relying on the summary plan description. She would have seen that, and she would have also seen the thing that says, if you want to know, look at the plan document, because the plan — the summary plan description says that. You're not even arguing that somebody would reasonably expect that a summary plan description would say you're going to have to reimburse for a third party, but then you would simultaneously entertain a reasonable expectation that this other document would say, ah, that right of subrogation and reimbursement that we mentioned in the summary plan description, don't worry about it. Look at the summary plan description. It is a cobbled-together, cut-and-paste, 121-page monstrosity that even includes a document But the right to subrogation and the right to reimbursement is three paragraphs. Excuse me? The right to subrogation and the right to reimbursement is described in three paragraphs. It is described in there. It is, along with all sorts of other things. But she should have been able to rely on what her fiduciary told her, that she should have been able to look at the plan language, which is what McCutcheon and Amara say controls. So — And if there was something different in there, she could have been able to do that. Assume that everything were the same in this case, except that the summary plan description made no reference whatsoever to an official plan document. Where would we be? There would be only one document called a summary plan description. Then you would have the choice of whether you want to follow Moore and Montanillo and say, yes, they can be the same document, or whether you want to follow what Justice Scalia said in his Amara concurrence. You need to have both. That would be a different case. We'd either have to refer to reverse or to the same document. Well, of course, his concurrence is not binding law. Nothing — nothing in Amara says that you can't just have one document. Well, that's what the Moore and the Montanillo courts have said. All right. You've saved time for rebuttal. Thank you, Mr. Schmidt. May it please the Court and opposing counsel, before I begin my argument, I need to advise the Court that one of the cases cited in Appley's brief has a subsequent history. That particular case is the Jenkins v. Grant Thornton case out of the Eleventh Circuit. On February 21st of this year, the Supreme Court denied certiorari at 137 Supreme Court 1070. That is significant because in that case, the Court stated, a plethora of authority exists for the proposition that, one, the holding on Amara was specifically targeted towards situations where a summary plan document conflicts with a master plan document, and, two, Amara does not address situations where a summary document is the only document. In the Appley's — I'm sorry, in the appellant's brief, there essentially are two cases that they rely upon to support their conclusion that a summary plan document cannot be the plan document, and I hate to use air quotes, but the plan document is also referred to as a master plan document, or what the courts say is the controlling document. The Jenkins case effectively overrules one of those. That is the Wilson case out of Florida as well. The other case is the Mull v. Motion Pictures Industry plan that he referenced in the Ninth Circuit. That case is set for argument in June. I would bet the farm that the Ninth Circuit is probably going to rule in the way that Ms. Wray is urging this Court to. They would be the only circuit. As we sit here today, there are more than two cases that say if there is only one master document. Is there — I think they — he pointed out that the summary document makes reference to another document. Does that — if there's only one document, but the one document makes reference to another document, do we have a problem? Yes and no. How do we handle that? The — it is somewhat inaccurate to say that there is only a summary plan document in this case. When Ms. Wray filed her lawsuit, she attached as an exhibit to her complaint 90 pages of a 121-page document. The full document is found in one place in the Court's record. That is with a business records affidavit signed by the benefits coordinator. That document consists of these items. There is a summary plan description. There is an attachment 1 that deals with women's health and cancer. There is an attachment 2, which tracks the model language set forth in the CFRs for summary plan descriptions and ERISA plans to use. And there is an attachment 3, which is the use of protected health information that allows — basically is to comply with the ACA. Now, if you look at that entire document, which the trial court did in this case, every single page of that document on the footer says, UnitedHealthcare Choice Plus Silver Plan for Allen Rich, Inc. It does not say summary plan description. The first pages, the first 90-some-odd pages that Ms. Wray attached do say summary plan description. The entire document together, however, includes these additional pages. Now, what this basically boils down to is there's two points for this Court to consider. The first point is, if there is only one document, how can it be ambiguous or in conflict with another document? My answer is, there cannot be. Amar does not apply. And the second question for this Court to consider, which actually was not raised in Appellee's — or I'm sorry, in Appellant's argument, so I won't go there, but I'm anticipating he may raise it in his response, and that would be the award of attorneys' fees. What is significant here is that Ms. Wray does not want the plan to be able to invoke ERISA and the case law associated with ERISA in order to enforce the terms of this document. Yet, Ms. Wray wants to argue that the award of attorneys' fees is in violation of ERISA. So in one sense, she wants ERISA to control, and in another sense, she does not want ERISA to control. What we have here that's very important to keep in mind is the timeline of what was involved at the time. Number one, this document was created, and number two, when Ms. Wray was injured. The malpractice incident happened on 11-17-11, November 17, 2011. She was covered under the 2011 health care plan, which went into effect in March of 2011. At that time, the precedent in the Fifth Circuit that the SPD is the only document that controls a situation was held by the Hansen case, that is Hansen v. Continental Insurance Company, 940 Fed 2nd 971. AMARA had not been handed down at the time this document was created. AMARA was decided months later in May of that year. So now, are we asked to apply AMARA retroactively to a plan that was in existence at the time? And in contrast to what opposing counsel indicated in his argument, the ERISA plan was not created in response to this lawsuit. This lawsuit was filed September 4th of 2013. The document he references that includes all the nice language that wraps it into and becomes the master plan document went into effect in March of 2013. That is in the record. The record contains an affidavit from the benefits administrator and an affidavit from the general counsel for the plan. It also contains excerpts from the depositions of the plan administrator and excerpts of the deposition from the general counsel. What is not in the record is that either of these or anyone associated with the plan drafted the document before this Court. What is in the record in Ms. Miles' deposition testimony is that she relied upon a broker and upon outside counsel for the drafting of this document. There is no evidence that they drafted this document. Looking at the terms of the document, that phrase, if there is any ambiguity or conflict, then the controlling plan will control. This Court has seen many ERISA cases and this Court has seen many ERISA plan documents before it. I submit that is boilerplate language. It is in almost every one I have ever seen. What I can tell you, I believe it is in the Monson Hill decision. I believe it is also in the McCutcheon case. If you look at the entire document before the Court, I may be wrong. I don't want to misrepresent, but I believe that it is. What we do know is that at the time of this lawsuit filing, there wasn't just one case. The Dudley case decided by the Fifth Circuit before they filed it treated the only document in existence that was not called the planned document, treated it as the planned document. That was Dudley. That was decided beforehand, but there's more. The Fourth Circuit in the McCorkle decision rendered in 2012 treated that these cases either said that a MARA does not apply in a single document case or that a single document can be a summary plan description. Cases are the Fourth Circuit, McCorkle, Fifth Circuit, Dudley, the Sixth Circuit, Schaffer, which was decided two days after a MARA specifically dealt with this issue. Not only that, so we've got three circuits so far. We've got Schaffer out of the Sixth Circuit. We've got Bidwell out of the Sixth Circuit, 2012. We have List out of the Sixth Circuit, 2013. More was decided after this lawsuit in 2015. We've also got the Tenth Circuit, the Eugene S. case decided in our brief, decided in 2011, the Foster decision out of the Tenth Circuit decided in 2012, and then the Monsignor decision in 2016. In those cases, can you tell me, was the issue raised that there should be another document, or did the parties go into it assuming since there's only one document, they were contesting the interpretation of that one document, not necessarily contesting that there should be another document? It was a combination. And because there are six of these, each case is a little bit different, but all six of them hold either that when there's only one case in existence, it can be the master document, or that the MARA decision does not control when there's only one document. As we've seen now, we also have the United States Supreme Court looking at this decision, that a MARA does not apply in instances of only one document. Now, they didn't rule upon it, but they denied certiorari upon it. Therefore, and I read that quote to you, a plethora of authority out there says a MARA does not apply when there's a single document. Now, what I believe is the case of this case. Who drafted this document in this case? It's not in the record. I would submit to you it was UnitedHealthcare. So it was not the plan administrator that drafted this document? No, Your Honor. What I've also, I believe is important for this Court to recognize is that what is before you in the record, there's affidavit testimony and deposition testimony, both from the benefits administrator and the general counsel. There is the model language from the CFRs that every ERISA plan should include in it. There is the entire document that is at issue before the Court, accompanied by a business records affidavit that includes not just the documents proposed or submitted by the plaintiff but also the additional documents attached to it. What is not in the record is any evidence that the plan willfully or deliberately intended to mislead Ms. Ray in any manner. What is not in the evidence is that any other plan, document, any other piece of paper existed at this time when she was involved in her accident or at the time she requested the copy of the document in control. The only thing before this Court in the record is the testimony by affidavit and deposition that this document, this 120-page document before this Court, is all that was in existence. This document is the document upon which she had the right to receive medical care benefits. This document, from which she agreed to accept these benefits, requires a reimbursement. And as the trial court said, basically, you can't have your cake and eat it, too. What is extremely important in looking at what the trial court did, this is not an instance  In this particular division, it was assigned to a magistrate judge to oversee. There were eight instances where the court considered the facts and merits of this case. Eight. The first one, the magistrate issued his first report and recommendation which granted the plan's motion for summary judgment, which, number two, denied the plaintiff's motion for summary judgment. The plaintiff then objected to both. So then we have, three, the district judge looked at the objections and looked at that and then the district judge granted or adopted the magistrate's report and recommendations. Then, on the issue of summary judgment, we have the same thing. First, the magistrate reviewed the briefing on the attorneys' fees and granted them. Then the plaintiff objected. So then the district judge reviewed the objections and adopted the magistrate's report. So all of these times, we had not just the district judge, but the magistrate reviewing them. We had the plaintiff's evidence and facts in her motion for summary judgment and in her two independent objections raising all the issues before the court that were reviewed, and every single time, the magistrate and the district judge upheld the plan's rights. We respectfully would ask this Court to do the same and to affirm both the willings issued, the granting of the summary judgment in favor of the plan, and the granting of attorneys' fees. Are there any questions from the Court? No. So is it your position that there was, in fact, a plan? Yes. Okay. So we don't have just one document, but that document sort of is part of the plan, because you said there's more than just a summary plan. There is, in fact, more to it. So there is a plan. My position is it arose by any other name and still arose, that whether you call it a summary plan description or you call it a master document or you call it the plan, the documents before this Court, that full 121 pages constitute a valid and And the law is that it's acceptable to have just one document, isn't it? Yes, it is, Your Honor. There are six appellate cases agreeing with that. There is no appellate court case that says that's not appropriate or that cannot happen as of today. All right. Thank you, Ms. Schwartz. Thank you for your consideration. Mr. Lassiter, you save time for rebuttal. Amara changed the law, how you deal with summary plan descriptions and plan documents. Before Amara, the consensus among the courts was that an ERISA fiduciary could be held responsible for and have to follow representations that it made in its summary plan description. The idea being you told your beneficiary something, you can't walk away from that. Amara said that's not the law. Before Amara, courts would often reform the plan document to comply with what was in the summary plan description. After Amara, courts can't do that anymore. The only thing that matters is the plan document. Before Amara, if you look at the amicus brief, what the amicus is talking about is concern about contradiction between the two documents. They're worried if they say something in the summary plan description, they might be on the hook for that, even though it's not in the plan. Concerns that the amicus is talking about, the reason to only have one document, like this court saw in Dudley, are gone since Amara. The plan is what controls the plan document. And the statute, ERISA said — But Amara doesn't say there must be two separate documents, does it? No. The law does. I mean, the statute provides for two separate things. Section 402a — I understand that you can have both, but that's — but where there's only one, it could serve as the document. Isn't that correct? That is what the Ninth Circuit has said — excuse me, the Sixth Circuit has said and the Eleventh Circuit has said. And even if that's true, again, we have an amicus here. The ERISA subrogation people are watching this case, in particular, to know whether that can happen even when you tell your beneficiary, we have a separate plan document. Even when you tell your beneficiary something that's not true, we as a court are going to overlook that and still treat it as if it were the Section 402a plan document, even when it says it's not. That's what makes this case unique, and it's not a technicality, and Donna Rae is not simply trying to avoid her responsibilities here. She's asking the Court to enforce the law and to not overlook when her fiduciary, who she should have been able to rely on, told her something that wasn't true. We think that's important. And before they're going to be able to take their power under ERISA, the least they can do is follow the law. I want to talk about the fee issue. Even if you disagree with me on that, I think that the district court erred in awarding fees here. The first thing they did was to award fees based on language in the plan document, the summary plan description. There is no precedent for that. Not a single case out there that says a court can award fees based upon language in the plan. ERISA has a fee-shifting statute, which gives the court discretion to award fees. If you affirm the award of fees based on the plan language, that will be something new, and it will turn ERISA into a loser-pays statute when the plan goes after somebody for subrogation. The law doesn't allow for that, and that needs to be reversed in any event. The district court, Belt and Suspenders, also tried to award fees on the plan. Kennedy, be interpreted to mean that the plan gives the attorneys the right to ask the court for fees, as opposed to saying the plan says you get fees. Does it mean the plan gives the lawyers the authority to request fees from the district court? You could interpret it as that. And under the statute, they have the ability to ask for fees. And that's what they pled. They didn't plead for fees under the plan provision. The only request for fees in the pleading, in the counterclaim, is under ERISA's fee-shifting statute. And then Bowen factors that this Court has identified kick in. Among other things, again, Donna Rae did what she was supposed to do here. She didn't try to run away from things. She put the money aside, and then she asked the court to decide what the rights were. When we filed this case, when we filed our summary judgment, there were three district court cases dealing with this issue. Two of them went Ms. Schmidt's way. One of them went ours. It took a year for the magistrate judge to reach his decision. Then another year to decide the attorneys' fees issue. If you look at the ruling, he cites a bunch of cases that were decided after we filed our motion papers. The issue was not decided, and it certainly had not been decided by this Court. I believe Donna Rae had a right to come to the district court and now come here and ask you to decide what her rights were, and that that is not a basis for awarding attorneys' fees against her. The beneficiary should be able to come to court and do that. Thank you, Mr. Lester. Your case is under submission. Thank you for your time. Last case for today, United States v.